IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| AMY CORBITT, Individually and as Parent and Natural Guardian of SDC, a Minor; JERRY RICH, Individually; ELIZABETH BOWER, as Parent and Natural Guardian of AMB, a Minor; and TONYA JOHNSON, as Parent and Natural Guardian of ERA, a Minor; DAMION STEWART, Individually and as Parent and Natural Guardian of JDS, a Minor; and as Parent and Natural Guardian of MS, a Minor, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Plaintiffs | * <br> * |
| v. | * Case Number: 5:16-cv-51 <br> * |
| COFFEE COUNTY, GEORGIA; DOYLE WOOTEN, Individually and in his Official Capacity as Sheriff of Coffee County; and MICHAEL VICKERS, Individually and in his Official Capacity as Deputy Sheriff of Coffee County, Georgia, | * <br> * <br> * <br> * <br> * <br> * <br> * |
| Defendants | * |

**BRIEF IN SUPPORT OF MOTION TO DISMISS
BY COFFEE COUNTY, GEORGIA, DOYLE WOOTEN, AND MICHAEL VICKERS**

COME NOW Defendants and move this Court to dismiss all claims asserted against Defendants. In support of their motion, Defendants show the Court the following:

### Introduction

Plaintiffs have filed suit against the above named defendants claiming violations of various rights under the federal and state law. Coffee County, Georgia is entitled to various immunities, and substantive defenses under federal and state law that require dismissal. The other defendants, in their official capacity, are also subject to dismissal due to various immunities and because the facts

alleged do not state a claim. The defendants, to the extent sued in their individual capacity, are either entitled to qualified immunity (federal claims), or official immunity (state claims), or upon the merits of the alleged claims. As such, all claims are subject to dismissal, as shown below.

## Statement of Facts

On July 10, 2014, Coffee County Deputy Sheriff Michael Vickers and other law enforcement officers were planning to apprehend a fleeing criminal suspect, Christopher Barnett. Dkt. No. 1, ¶¶ 23, 32. After conducting surveillance on the area where Barnett was believed to be evading capture, Vickers and the other officers planned to secure the property, which consisted of a mobile home and a yard owned by Plaintiff Amy Corbitt. Id., ¶ 24, 37. Plaintiffs admit that Barnett was, in fact, on the property. Id., ¶¶ 24, 29.

Defendant Vickers and the other officers entered the yard of the property. Dkt. No. 1, ¶ 24. The persons in the yard at that time were Christopher Barnett, the criminal suspect; Plaintiff Damion Stewart; Stewart's two minor children; and six other minor children. Id. The officers ordered everyone in the yard to get onto the ground, and they handcuffed Stewart. Id. Loaded guns were held to the backs of Stewart and four of the minor children as they lay on the ground; Stewart's two minor children were not restrained. Id., ¶¶ 24, 25.

As the occupants of the yard lay on the ground, a dog on the property was acting in a manner such that Plaintiffs acknowledge that it would have been appropriate to subdue it with a Taser or pepper spray, although Plaintiffs claim that the dog did not pose "any immediate threat" to the officers. Dkt. No. 1, ¶¶ 28, 41, 44. Defendant Vickers discharged his firearm at the dog, but missed; the dog retreated under the residence. Id., ¶ 28. Eight to ten seconds later, the dog had re-emerged, and Defendant Vickers again discharged his firearm at the dog as it approached

the officers and the persons on the ground. Id. Again, Vickers's shot missed, but the bullet

unfortunately hit one of the minor children lying on the ground in the back of his knee, injuring

the child. Id. Plaintiffs acknowledge that Vickers was attempting to shoot the dog when he

accidentally shot the child's leg. Id., ¶¶ 28, 29, 41, 43.[1]

The Complaint was filed on July 1, 2016. Id., p. 1. Service of process was attempted

October 4, 2016.[2]

### Legal Standard

Where a defendant challenges a complaint for failing to adequately state a claim upon which

relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint.

See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009)). First, the court should "eliminate any allegations in the complaint

that are merely legal conclusions." Id. This first prong excludes "threadbare recitals of a cause of

action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Second, the

court should assume that all well-pleaded factual allegations are true "and then determine whether

[those allegations] plausibly give rise to an entitlement to relief." Am. Dental Ass'n, 605 F.3d at

---

[1] Several of the facts set forth above are disputed by defendants, particularly that guns were held to the back of the minors on scene. However, for instant purposes only, all facts in plaintiffs' Complaint are accepted as true.

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiffs' complaint and limit its consideration to the pleadings and exhibits attached thereto. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007); Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009).

[2] While the court's docket has no proof of service (which plaintiff is required to provide), all three defendants received a copy of the suit on October 4, 2016, which was 95 days after it was filed, too late under FRCP 4 (m).

1290. In determining plausibility, the court should "draw on its experience and common sense." Iqbal, 129 S.Ct. at 1950. Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful conduct the plaintiff[s] would ask the court to infer." Am. Dental Ass'n, 605 F.3d at 1290 (quoting Iqbal and relying on Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). Ultimately, if the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

### Argument and Citation of Authority

**I.      Coffee County is not liable under federal or state law.**

   A.      Coffee County is not liable for the law enforcement activities of the Sheriff under federal law.

Local government bodies such as counties are persons within the meaning of Section 1983 and can be held accountable for the deprivations of federally protected rights. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 689, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, a county "is liable under section 1983 only for acts for which the county is actually responsible." Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc)). Liability can not rest on a theory of respondeat superior. Id.

"In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement functions. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and policies." Grech, 335 F.3d at 1336 (citing O.C.G.A. § 15-16-23, and Wayne County v. Herrin, 210 Ga. App. 747, 751, 437 S.E.2d 793 (Ga. App. 1993)); see also, Manders v. Lee, 338 F.3d 1304, 1311 (11th Cir. 2003) (en banc) ("under

Georgia's Constitution, the State has exclusive authority and control over the duties and affairs of the sheriff's office."). Georgia sheriffs, when acting in the areas of law enforcement, duties in the courts, and corrections, are "state actors," not "county actors." Id. at 1312-1319.

From the Complaint, it appears the plaintiffs are attempting to predicate Coffee County's liability on the theory that Coffee County is responsible for the actions of employees of the sheriff, or somehow responsible for law enforcement obligations under Georgia law. (Complaint for Damages, ¶ 9). As noted in the above-cases, a sheriff and his deputies are not deemed county employees. As a result, Coffee County cannot be held liable for their alleged acts as a matter of law. Slaughter v. Dooly County, 2007 U.S. Dist. LEXIS 72590 (M.D. Ga. 2007); Owens v. Fulton Cty., 877 F.2d 947 (11th Cir. 1989). Accordingly, Coffee County is entitled to the dismissal of all of the plaintiff's federal claims.

B.    Coffee County is entitled to sovereign immunity under Georgia law.

The Plaintiff's state law claims against Coffee County, Georgia are barred by sovereign immunity. Art. I, § II, ¶ IX of the Georgia Constitution of 1983; Georgia Dept. of Natural Resources v. Center for a Sustainable Coast, 294 Ga. 593, 599 (2014); and Gilbert v. Richardson, 264 Ga. 744, 746-747 (2)(1994).

Pursuant to the Constitution of Georgia of 1983, the protection afforded to state and local governments by the doctrine of sovereign immunity was somewhat eroded. The 1983 Constitution provided:

> [T]he defense of sovereign immunity is waived as to those actions for the recovery of damages against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided, but only to the extent of any liability insurance provided.

Constitution of the State of Georgia, Article I, § II, ¶ IX (1983) [emphasis added].

In 1985, the Georgia Supreme Court determined that Article I, § II, ¶ IX of the Georgia Constitution applied to counties, since they were within the meaning of "departments and agencies" of the state. See Toombs County v. O'Neal, 254 Ga. 390 (1985), citing Nelson v. Spaulding County, 249 Ga. 334 (1982). A 1991 amendment to the Constitution, which is the current version, restored sovereign immunity. The 1991 Amendment provides:

> (a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for making, handling and the disposition of actions or claims against the state and its departments, agencies, officers and employees upon such terms and subject to such conditions and limitations as the General Assembly may provide.
>
> ...
>
> (e) Except as specifically provided in this paragraph, sovereign immunity extends to the State and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Constitution of the State of Georgia, Art. I, § II, ¶ IX (as amended 1991) [emphasis added].

Pursuant to the 1991 amendment, the "1983 insurance waiver" in the Constitution was withdrawn. Now, the defense of sovereign immunity can only be waived pursuant to a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver. See Woodard v. Laurens County, 265 Ga. 404 (1995) (citing Gilbert v. Richardson, 264 Ga. 744 (1994)). Though the General Assembly has provided a waiver applicable to the state in the Georgia Tort Claims Act, that act specifically excludes "counties" from the definition of state. See O.C.G.A. § 50-21-22 and Woodard, supra. Further, though there are state statutes providing sovereign immunity waivers for municipalities by the purchase of general liability insurance, e.g., O.C.G.A. § 36-33-1

there has been no such specific waiver provided for counties. In fact, the only legislative intent is to the contrary. See O.C.G.A. § 36-1-4.[3]

County immunity has repeatedly been reaffirmed after Woodard and Gilbert. See Swan v. Johnson, 219 Ga. App. 450 (1995); Kordares v. Gwinnett County, 220 Ga. App. 848 (1996); Saylor v. Troup County, 225 Ga. App. 489 (1997). The Kordares case fairly summarizes this particular area of the law:

> [T]he court finds that the county is immune from negligence liability. The doctrine of sovereign immunity applies to all state departments and agencies, including counties, **regardless of the purchase of liability insurance**. Ga. Const. 1983, Art. I, Sec. II, Para. IX (amended 1990); Gilbert v. Richardson, 264 Ga. 744 (1994). [...] The Georgia Constitution further dictates that sovereign immunity 'can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver'.

Kordares, *supra* at 849. (Emphasis supplied).[4]

Sovereign immunity even extends to intentional tort claims. Williams v. Solomon, 242 Ga. App. 807, 810 (2000) (sovereign immunity not pierced even if agent committed intentional tort); Darnell v. Houston Co. Bd. of Ed., 234 Ga. App. 488, 489 (1998).

Even federal courts have recognized that under Georgia law, counties are "immune to suit for *any cause of action*, unless sovereign immunity is expressly waived by constitutional provision

---

[3]    **O.C.G.A. § 36-1-4.  WHEN COUNTY LIABLE TO BE SUED.**

A county is not liable to suit for any cause of action unless made so by statute.

[4]  The General Assembly has provided a waiver of sovereign immunity for counties where motor vehicle liability insurance is purchased, to the extent of that insurance. *See* O.C.G.A. §§ 33-24-51, 36-92-1, et. seq., and Gilbert v. Richardson, 264 Ga. 744 (1994). However, these statutes only provides a waiver of liability for incidents arising out of the "ownership, maintenance, operation or use" of a motor vehicle "by . . . the county." See also Woodard at 405. Because the alleged events in this case were unrelated to the ownership, maintenance, operation, or use of motor vehicles by Coffee County, these statutes are irrelevant and do not provide a waiver of sovereign immunity.

or statute." <u>Kitchen v. CSX Transportation, Inc.</u>, 6 F.3d 727, 731 (11th Cir. 1993) (emphasis supplied). The <u>Kitchen</u> court based its decision upon the Constitution of the State of Georgia, Article I, § II, ¶ IX (as amended 1991) and O.C.G.A. § 36-1-4.

Sovereign immunity is not an affirmative defense that must be established by a party seeking its protection. <u>Athens-Clarke County v. Torres</u>, 246 Ga. App. 215, 216 (2000). Rather, the plaintiff must establish that immunity has been waived. <u>Id</u>. Here, the plaintiff cannot introduce any evidence which would abrogate sovereign immunity. Since it is clear the plaintiff's claims are not the type of case for which sovereign immunity has been waived, defendant Coffee County, Georgia is entitled to dismissal. <u>Oconee Cmty. Serv. Bd. v. Holsey</u>, 266 Ga. App. 385, 597 S.E.2d 489 (2004) (reversing the trial court's denial of motion to dismiss on grounds of sovereign immunity).[5]

## III. Plaintiffs' Official Capacity claims under 42 U.S.C. § 1983 fail.

A. <u>Sheriff Wooten and Deputy Vickers are entitled to Eleventh Amendment immunity with respect to Plaintiffs' claims under 42 U.S.C. § 1983</u>.

Both the Eleventh Circuit and Georgia District Courts have found that Georgia's sovereign immunity operates as a bar to liability from federal claims unless waiver or abrogation has occurred. As to 42 U.S.C. § 1983 claims, Congress has not abrogated sovereign immunity and Georgia has not waived its sovereign immunity. O.C.G.A. § 50-21-23 ("The state does not waive any immunity with respect to actions brought in the courts of the United States."); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity").

Specifically addressing Sheriff Wooten's and Deputy Vickers' entitlement to immunity from § 1983 claims, in their official capacity, the Eleventh Amendment "bars suits brought in federal court

---

[5] Plaintiff alleges that the county's immunity is waived by O.C.G.A. § 36-33-1. That is not correct as that statute applies to municipalities, not a county.

when the State itself is sued and when an 'arm of the State' is sued." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). Eleventh Amendment immunity may be asserted not only by state officers and state officials, but by all persons "acting as an 'arm of the State,' which includes agents and instrumentalities of the State." Manders, 338 F.3d at 1308 (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)). In Manders, the court provided four factors that may be considered in determining whether an entity is an "arm of the State" for immunity purposes: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." 338 F.3d at 1309. Applying the four-part test in that case, the Court concluded that Eleventh Amendment immunity extends to claims involving a sheriff's adoption of a use-of-force policy for a jail. Id. Subsequent cases have applied the Manders test to additional functions performed by sheriffs, and concluded that a sheriff acts as an arm of the state when he performs those functions. In Townsend v. Coffee County, the plaintiff claimed that the defendant sheriff's deputy forcefully grabbed her arm and pointed his service weapon at her head before handcuffing her, despite the fact that she had not committed any wrongful act. 854 F. Supp. 2d 1345, 1350 (S.D. Ga. 2011). Applying the Manders factors, the Townsend court noted that "the state alone . . . has delegated to the sheriff's office the specific duty of law enforcement. Investigatory stops and arrests fall squarely within the traditional law-enforcement responsibilities of a sheriff and his deputies." Id. at 1352 (citing Manders, 338 F.3d at 1312) (emphasis supplied).

The claims against these defendants, in their official capacity, relate to a suspect's capture, arrest, and detention– quintessential law-enforcement functions. The defendants act as an arm of the

state when they execute these state-controlled functions, and they are consequently entitled to Eleventh Amendment immunity from all claims asserted pursuant to 42 U.S.C. § 1983.

      B.    <u>Regardless, even if immunity was waived, in their official capacity, they are not "persons" subject to suit under § 1983</u>

Plaintiffs' 42 U.S.C. §1983 claims against the law enforcement officials fail for a second reason. Pursuant to that statute, a plaintiff may bring suit against a "person" who deprives the plaintiff of his rights. 42 U.S.C. §1983. However, a suit against a person in his official capacity is actually a suit against the governmental entity the person represents. <u>Kentucky v. Graham</u>, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). A suit against a sheriff in his official capacity, based upon his law-enforcement activities, is thus a suit against the state. <u>See</u> <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1347 (11th Cir. 2003) ("[T]he sheriff acts on behalf of the State in his function as a law enforcement officer . . ."). And "a State is not a 'person' within the meaning of §1983." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 65 (1989). The foregoing analysis presents an alternative reason for dismissal that is equally as compelling as the Eleventh Amendment analysis in <u>Manders</u>. <u>See</u> <u>Jude v. Morrison</u>, 534 F. Supp. 2d 1365, 1368 (N.D. Ga. 2008) (dismissing claims against the defendant sheriff's deputies because deputies are not "persons" who can be sued under §1983 when they act in furtherance of their state-controlled law-enforcement function).

A suit against Sheriff Wooten or Deputy Vickers, in their official capacity, is actually a suit against the state of Georgia so long as they were acting as an arm of the state in connection with the incident at issue. As discussed in the previous section, they were indeed acting as an arm of the state at all times relevant to Plaintiffs' §1983 claims. Accordingly, Plaintiffs' claims under 42 U.S.C.

§1983 are barred because these defendants, in their official capacity, are not "persons" who may be sued under §1983.

C.     Sheriff Wooten cannot be held liable under a theory of respondeat superior[6]

Even if it is determined defendant Wooten is a "person" for purposes of §1983 and 11th amendment immunity is inapplicable, plaintiffs are still precluded from suing supervisory officials under §1983 on the basis of respondeat superior or vicarious liability. Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (citing Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994)). Courts have generally held that a supervisor may be liable only where he personally participated in a constitutional violation or where there is a "causal connection between [his] actions . . . and the alleged constitutional deprivation." Braddy v. Florida Dept. of Labor and Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998). The causal connection may be established by showing that (1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) the facts support an "inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiffs' Complaint contains no allegation that Sheriff Wooten personally participated in the incident at issue. [Complaint for Damages, generally]. Nor has plaintiff claimed that Sheriff Wooten was aware of "obvious, flagrant, rampant" violations of constitutional rights or directed the deputy to act unlawfully. Consequently, Sheriff Wooten cannot be held liable under §1983 for any alleged violation.

---

[6] This defense applies with regard to Sheriff Wooten's individual and official capacities.

In the absence of an official policy promoting illegal conduct, supervisory liability may be established by showing a causal connection between an employer's established practices and an employee's violation of a plaintiff's rights. Proving the existence of a custom requires evidence of a pattern of substantially similar instances of the same violation suffered by the plaintiff. See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005) (affirming the dismissal of a claim against a city where the plaintiff had a list of cases involving excessive force but could not "show that any of them involved factual situations that are substantially similar to the case at hand"). Moreover, mere complaints of past violations are insufficient; the plaintiff must prove that those complaints actually had merit. See Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that evidence of ten unsubstantiated excessive-force complaints did not prove city policy of condoning or tolerating excessive force).[7] There is no "history of widespread abuse" of individuals like Plaintiffs, and liability cannot attach to Sheriff Wooten under a custom or practice theory.[8]

## IV. Plaintiff's state law claims against Sheriff Wooten and Deputy Vickers, in their official capacity, are also barred by sovereign immunity

Under Georgia law, sheriffs, and their employees, in their official capacity, are deemed to be protected by the same immunity that protects the county where they serve. As such, sovereign immunity also bars claims against public officials, in their official capacities:

---

[7] Plaintiffs' vague reference to "ten separate occurrences" of excessive force is unavailing. (Complaint, ¶ 38). Only one allegedly involved a dog being "shot and killed" (which is false, but must be assumed true for instant purposes). Plaintiff does not attempt to supply any details of the substantial similarity required to rely upon such alleged incidents.

[8] Defendants note that plaintiff has not pled facts supporting a policy, practice or custom of the county either. To the extent they are asserting supervisory liability on behalf of Coffee County, the same analysis would apply.

> Although Walker County is not a named defendant in this action, Millard was sued in his capacity as Walker County Sheriff. Accordingly, the Gilberts' claims are, in essence, claims against Walker County and Millard may raise any defense available to the county, *including sovereign immunity*." Gilbert v. Richardson, 264 Ga. 744, 746 (1994) (emphasis supplied).

In Woodard, the Supreme Court indicated the continuing authority of Gilbert by affirming the grant of summary judgment to five county commissioners and two county employees in their *official* capacities on the basis of sovereign immunity. Woodard v. Laurens Cnty., 265 Ga. 404, 404-05 (1995). Accordingly, the analysis of county immunity *supra* applies with equal force to Sheriff Wooten and Deputy Vickers, in their official capacity. All of Plaintiffs' claims under Georgia law against in their official capacity are consequently subject to dismissal.

## V. Plaintiffs have not pled facts sufficient to demonstrate the elements of any claims (federal or state) against the defendants under the Twombly/Iqbal standard

To state a claim under state law, the plaintiff is required to allege *facts* that, if proven true, would plausibly entitle plaintiff to recover; as opposed to bare, conclusory allegations that the defendants' actions harmed him. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")). Applicable law regarding plaintiffs' substantive claims makes clear plaintiffs have not met the threshold.

A.   <u>No viable federal or state Equal Protection claim has been plead</u>.

Plaintiffs allege an Equal Protection violation under state and federal law. As to the federal claim premised upon the Fourteenth Amendment, plaintiffs do not allege, nor provide factual support, any impermissible class based animus by defendants.

Needless to say, "different treatment of dissimilarly situated persons does not violate civil rights laws." <u>Jackson v. Bell South Telecommunications</u>, 372 F. 3d 1250, 1273 (11th Cir. 2004). <u>See also</u> <u>E & T Realty v. Strickland</u>, 830 F. 2d 1107, 1109 (11th Cir. 1987). In a discrimination case, the plaintiff must allege that similarly situated individuals were treated more favorably and the individuals used for comparison "must be similarly situated in all relevant respects besides race." <u>Jackson v. Bell South Telecommunications</u>, supra at p. 1273. <u>See also</u> <u>Knight v. Baptist Hospital of Miami, Inc.</u>, 330 F. 3d 1313, 1316 (11th Cir. 2003).

In the instant case, the plaintiffs do not allege any treatment they received was due to any impermissible class based animus (e.g., race, gender, age, disability, etc.). As such, they do not state a federal Equal Protection claim.

With regard to the alleged Equal Protection claim under the Georgia Constitution (Article I, Section I, Paragraph II), the Complaint fails to state a claim because the Georgia Constitution does not provide a claim for money damages.

"Georgia has no equivalent to 42 USC § 1983, which gives a claim against a state officer individually for certain unconstitutional acts." <u>Davis v. Standifer</u>, 275 Ga. App. 769, 772 n.2, 621 S.E.2d 852, 855 (2005) (punctuation omitted). Georgia law thus does not provide any cause of action for the violation of a right protected by the Georgia Constitution, and plaintiffs' claims "under the Constitution of the State of Georgia" fail. <u>Draper v. Reynolds</u>, 278 Ga. App. 401, 403 n.2, 629

S.E.2d 476, 478 (2006) ("To the extent that Draper is attempting to allege state constitutional claims, we note that Georgia does not have an equivalent to 42 USC § 1983.").

B.    Any assault and battery claim is eliminated by plaintiffs' allegations.

Plaintiffs very clearly allege that defendant Vickers' intent was to shoot the dog on the scene, rather than any plaintiff.  Further, it is clear from the Complaint that it was not Vickers, but other "officers," that allegedly seized persons other than SDC.  As such, there is no viable claim for assault and battery.  See Wallace v. Stringer, 250 Ga.App. 850, 853 (2001) ("To constitute an assault no actual injury need be shown, it being only necessary to show an intention to commit an injury, coupled with an apparent ability to do so") (emphasis supplied).  See also O.C.G.A. § 16-5-23.1 (a) A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another.)(emphasis supplied).

In the Complaint, plaintiffs illustrate that Deputy Vickers intended to shoot the dog, not SDC. No assault and battery claim is stated.

C.    Any state law claims are barred by official immunity.

In Hoyt v. Cooks, 672 F.3d 972, (11th Cir. 2012), the Eleventh Circuit evaluated an assault and battery claim and the impact of official immunity under Georgia law.  "Under the Constitution of Georgia, Cooks and Harkleroad will have official immunity for their discretionary acts unless they acted with 'actual malice.'  Merrow v. Hawkins, 266 Ga. 390, 467 S.E.2d 336, 337 (1996). There is no dispute that their actions were discretionary. 'Actual malice' requires 'a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others. A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to

overcome official immunity must be <u>the intent to cause the harm suffered by [the suspect]</u>.' <u>Murphy v. Bajjani</u>, 282 Ga. 197, 647 S.E.2d 54, 60 (2007) (emphasis supplied)." <u>Id</u>. at 980-81.

"In this case, no reasonable jury could find that Cooks and Harkleroad used their Tasers with the deliberate intent to do wrong." <u>Id</u>. Here, plaintiffs' Complaint reveals that Vickers did not discharge his firearm with a deliberate intent to do wrong. Hence, official immunity applies.[9]

D. <u>All of Plaintiffs' claims are subject to dismissal for want of valid service</u>.

Federal Rule of Civil Procedure 4(m) establishes the time period within which a complaint must be served under federal law, and provides, *inter alia*, that

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Where the statute of limitations runs during the 4(m) service period, however, dismissal *with* prejudice is proper, because any attempt by the plaintiff to re-file the action and make adequate service would be futile. <u>See</u> <u>Melton v. Wiley</u>, 262 F. App'x 921, 922 (11th Cir. 2008) (affirming dismissal for failure to serve, and noting that because statute of limitations would bar a re-filed action, the dismissal was "tantamount to a dismissal with prejudice"); <u>Turner v. Richmond Cnty.</u>,

---

[9] Plaintiffs' Complaint also makes clear that they contend Vickers shooting of SDC was not an intent to do wrong, but rather "grossly negligent" or "negligent," neither of which are enough to pierce official immunity (Complaint, ¶¶ 31-32). <u>McCall v. Whisky</u>, 587 Fed.Appx. 519, 521 (11th Cir. 2014) ("Actual malice requires a deliberate intention to do wrong, and it does not include reckless disregard for the rights or safety of others").

Finally, though the state law claim appears to be aimed at defendant Vickers, even if a claim is intended against Sheriff Wooten, it is also barred by official immunity, as the supervision of subordinate employees is an act protected by official immunity. <u>Georgia Dept. of Corrections v. Lamaine</u>, 233 Ga.App. 271, 273 (1998).

No. CV 110-086, 2010 WL 5389939, at *2 (S.D. Ga. Nov. 30, 2010), report and recommendation adopted, No. CV 110-086, 2010 WL 5389584 (S.D. Ga. Dec. 21, 2010) ("the proper course of action is to dismiss a case with prejudice for failure to serve when the statute of limitations would render a refiled action time-barred.").

For all claims brought pursuant to 42 U.S.C. §1983, federal courts borrow the forum state's statute of limitations for personal injury actions. Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (1990). In Georgia, the statute of limitations on personal injury claims is two years. Berry v. Keller, 157 Fed. Appx. 227, 228-29 (2005), citing O.C.G.A. §9-3-33. The question of when a cause of action accrues under §1983, however, is governed by federal standards. Corn, 904 F.2d at 588. Generally, a federal claim accrues and the statute of limitations begins to run when "the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Berry, 157 Fed. Appx. at 229.

Plaintiffs' Complaint was filed on July 1, 2016, and the 90-day service period provided by Rule 4(m) expired on September 29, 2016. All of the events at issue occurred on July 10, 2014, and Plaintiffs were aware of the facts that inform their Complaint on that date. Dkt. No. 1 at ¶23. Because all of Plaintiffs' claims are based on 42 U.S.C. §1983, the statute of limitation on those claims ran on July 10, 2016. But service of Plaintiffs' Complaint was not made until October 4, 2016 – after the running of the statute of limitations, and after the expiration of the 90-day 4(m) period for service. Plaintiffs failed to effect timely service of their Complaint, and in light of the fact

that the statute of limitations has run and the claims cannot be re-filed, dismissal with prejudice is warranted.[10]

      E.    <u>Plaintiffs' federal claims are barred by qualified immunity</u>.

Qualified immunity generally protects an officer from suit—even if his conduct was unlawful—so long as case law had not clearly established that his conduct was unlawful at the time it occurred. "The defense of qualified immunity requires courts to enter judgment in favor of a government employee unless the employee's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Morse v. Frederick</u>, 551 U.S. 393, 429 (2007). In explaining when a right is "clearly established," the Supreme Court has held that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987). A plaintiff cannot normally meet that burden unless he can point to previous case law holding that the specific conduct at issue is unlawful.

> [T]he burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. The line between lawful and unlawful conduct is often vague. [The] "clearly established" standard demands that a bright line be crossed. . . . If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.
> <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993) (citations and some quotation marks omitted).

Thus, "to defeat summary judgment . . . a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." <u>Id</u>.

---

[10]    Defendants acknowledge that the claims by the minor plaintiffs are tolled, and note that those claims should be dismissed without prejudice.

1. *The claims of SDC are barred*.

The Eleventh Circuit has repeatedly held that "there is no clearly established right to be free from the accidental application of force during arrest, even if that force is deadly." Speight v. Griggs, 620 Fed. Appx. 806 (11th Cir. 2015), citing Sanders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014). Rather, a Fourth Amendment violation occurs where a law enforcement officer "*intentionally* uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Id.* (punctuation omitted) (emphasis in original). This requirement of intentionality has been described in detail by the Supreme Court, which also provided a hypothetical concerning harm to innocent bystanders:

> A seizure occurs even when an unintended person or thing is the object of the detention or taking [cit.], but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act. . . . Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.
> Brower v. Cty. of Inyo, 489 U.S. 593, 596–97, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989).

The Eleventh Circuit, relying on *Brower*, has held that "unintended consequences of government action cannot form the basis for a Fourth Amendment violation." Ansley v. Heinrich, 925 F.2d 1339 (11th Cir. 1991).

While the Eleventh Circuit has not addressed the exact issue presented by this case – whether a law enforcement officer may be held liable under 42 U.S.C. §1983 where he attempts to shoot a dog during the course of an arrest and accidentally shoots a bystander instead – at least two foreign district courts have held that no constitutional violation occurs under those circumstances. The more recent of the cases provides a succinct analysis of the claim:

> Mr. Brandon was accidentally shot in the leg when the officers shot at the dog. He frames his constitutional claim against the individual officers as a Fourth Amendment claim for excessive force. All claims that a law enforcement officer has used excessive force in the course of an arrest or seizure should be analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A seizure under the Fourth Amendment requires purposeful conduct, see Brower v. County of Inyo, 489 U.S. 593, 595, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); it is not enough that the officers intended to fire their guns, they must have intended to hit Mr. Brandon for his injury to constitute a seizure for Fourth Amendment purposes.
> Brandon v. Vill. of Maywood, 157 F. Supp. 2d 917, 924–25 (N.D. Ill. 2001).[11]

And even in the second such case, where the person accidentally hit by a bullet intended for a dog *was the person the officers intended to seize,* the court – citing Inyo – held that no Fourth Amendment violation had occurred. Dahm v. City of Miamisburg, No. C-3-95-207, 1997 WL 1764770, at *9 (S.D. Ohio Mar. 31, 1997). Rather, it held, because the plaintiff was struck by a bullet intended for the dog, the plaintiff was not "stopped by the very instrumentality set in motion or put in place in order to achieve that result" as Inyo requires. Id.

---

[11] The Brandon court then went on to hold that the plaintiff's §1983 claim for violation of his Fourteenth Amendment rights also failed, because there was no evidence that the officer had "a purpose to cause harm" to the man who was accidentally shot, and thus the conduct did not rise to a level that "shocks the conscience" as would permit a finding that the Fourteenth Amendment was violated. Brandon v. Vill. of Maywood, 157 F. Supp. 2d 917, 925 (N.D. Ill. 2001), citing County of Sacramento v. Lewis, 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

Here, Plaintiffs acknowledge repeatedly in their Complaint that Defendant Vickers was trying to shoot a dog when his bullet accidentally hit the leg of the minor child, SDC. Dkt. No. 1, ¶¶ 28, 29, 41, 43.Not only is there no Eleventh Circuit case law establishing that Vickers's conduct was clearly illegal; the right which SDC seeks to vindicate – the right to be free from the accidental application of force – is one that the Eleventh Circuit has explicitly held is *not* clearly established. Speight v. Griggs, 620 Fed. Appx. 806 (11th Cir. 2015). Moreover, judges in other district courts, faced with facts substantially similar to those here concerning accidental shootings of bystanders by officers who were attempting to shoot dogs, have held that the officers acted legally. "We cannot realistically expect that reasonable police officers know more than reasonable judges about the law." Barts v. Joyner, 865 F.2d 1187, 1193 (11th Cir. 1989), *cert. den.* 493 U. S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989).

2.     *The claims of the remaining plaintiffs are barred*.

In Croom v. Balkwill, the Eleventh Circuit considered an excessive force claim very similar to that made by all of the plaintiffs other than SDC here. 645 F.3d 1240 (11th Cir. 2011). There, the plaintiff – an elderly and infirm woman wearing nothing but a one-piece bathing suit – was gardening in the front yard of her son's house, which she was visiting. Id. at 1244. An undercover officer dressed as a mail carrier interacted with the plaintiff prior to the execution of a search warrant at the property, and determined that she did not present any risk. Id. Shortly thereafter, officers executing the search warrant for controlled substances ran onto the property wearing masks and black clothing, and carrying guns. Id. at 1245. They screamed at the plaintiff to get on the ground, and when her physical limitations prevented her from going further down than a crouched position, an officer shoved her to the ground. Id. The plaintiff heard the "click" of a gun, felt an officer place

a foot on her back, and was told to "shut her mouth" when she tried to question whether the persons detaining her were law enforcement officers. Id. After ten minutes, the plaintiff was allowed to get up and was informed that the masked and armed persons were law enforcement. Id. The roommate of the plaintiff's son, who was inside the house, admitted to importing and distributing controlled substances, and was arrested. Id. The plaintiff claimed ongoing medical problems related to her seizure and detention. Id.

The Eleventh Circuit cited Graham v. Connor for the rule that excessive force claims generally require "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake," but noted that "our Circuit has long declined to entertain claims of excessive force predicated upon the use of de minimus force by law enforcement." Croom, 645 F.3d at 1252, citing Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir.2000) ( "[T]he application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."). The court then went on to state that although it was "skeptical that the force alleged was truly necessary under the circumstances," there was no constitutional violation based on its usage. Croom, 645 F.3d at 1252.

> Even if unnecessary, the force used against Croom was de minimus. . . . [t]he force here at issue consists of Deputy Graham pushing Croom to the ground from her squatting position and holding her there with a foot (or knee) in the back for up to ten minutes. . . . [T]he risk of harm to officers and occupants is minimized "if the officers routinely exercise unquestioned command of the situation." [cit.] Croom was in the front yard of a house known by law enforcement to be involved in the distribution of controlled substances at the time it was searched pursuant to a warrant. [cit.] For the safety of everyone involved—including Croom—the officers were authorized to exercise "unquestioned command of the situation" by placing all the occupants of the Premises on the ground for several minutes while securing the home and ensuring there was no danger to the officers or the public.
> Id., 1252-53.

Here, all of the Plaintiffs who were present in the yard when officers arrived to apprehend Christopher Barnett, other than SDC and the minor children of Plaintiff Stewart, were ordered to get on the ground. They did so, and unlike the <u>Croom</u> plaintiff, none of them allege that they were pushed or otherwise forced to the ground by the officers. Plaintiff Stewart was handcuffed, and each of the Plaintiffs lying on the ground had a loaded gun held to his or her back. Plaintiffs do not allege that they were detained any longer than necessary to allow officers to arrest Christopher Barnett, and they do not dispute that Barnett was present on the property and was properly arrested. And critically, none of the Plaintiffs, other than SDC, alleges that he or she suffered any bodily injuries as a result of the brief detention on the ground.

Plaintiffs cannot point to case law clearly establishing that they were subjected to excessive force in violation of the Fourth Amendment. Indeed, <u>Croom</u>, which involved extremely similar facts plus the addition of actual injuries to the plaintiff, affirmatively establishes that Defendants' conduct was entirely legal. Qualified immunity thus bars the claims of all remaining Plaintiffs.

## CONCLUSION

Plaintiffs' Complaint fails to state a claim and is subject to dismissal.

This 25th day of October, 2016.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia State Bar Number: 687830
**ATTORNEYS FOR DEFENDANTS**
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544///(912) 264-9667 FAX
rstrickland@brbcsw.com

| | |
|---|---|
| AMY CORBITT, Individually and as Parent and Natural Guardian of SDC, a Minor; JERRY RICH, Individually; ELIZABETH BOWER, as Parent and Natural Guardian of AMB, a Minor; and TONYA JOHNSON, as Parent and Natural Guardian of ERA, a Minor; DAMION STEWART, Individually and as Parent and Natural Guardian of JDS, a Minor; and as Parent and Natural Guardian of MS, a Minor, | * * * * * * * * * * |
| Plaintiffs | * * |
| v. | * Case Number: 5:16-cv-51 |
| | * |
| COFFEE COUNTY, GEORGIA; DOYLE WOOTEN, Individually and in his Official Capacity as Sheriff of Coffee County; and MICHAEL VICKERS, Individually and in his Official Capacity as Deputy Sheriff of Coffee County, Georgia, | * * * * * * * |
| Defendants | * |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 25th day of October, 2016.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar Number: 687830
Attorney for Defendants