IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| AMY CORBITT, Individually and as Parent and Natural Guardian of SDC, a Minor; JERRY RICH, Individually; ELIZABETH BOWER, as Parent and Natural Guardian of AMB, a Minor; and TONYA JOHNSON, as Parent and Natural Guardian of ERA, a Minor; DAMION STEWART, Individually and as Parent and Natural Guardian of JDS, a Minor; and as Parent and Natural Guardian of MS, a Minor, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| Plaintiffs | * <br> * |
| v. | * Case Number: 5:16-cv-51 <br> * |
| COFFEE COUNTY, GEORGIA; DOYLE WOOTEN, Individually and in his Official Capacity as Sheriff of Coffee County; and MICHAEL VICKERS, Individually and in his Official Capacity as Deputy Sheriff of Coffee County, Georgia, | * <br> * <br> * <br> * <br> * <br> * <br> * |
| Defendants | * |

**REPLY BRIEF OF DEFENDANTS COFFEE COUNTY, GEORGIA, DOYLE WOOTEN, AND MICHAEL VICKERS IN SUPPORT OF THEIR MOTION TO DISMISS**

COME NOW Coffee County, Georgia; Doyle Wooten; and Michael Vickers, and file this reply brief in support of their Motion to Dismiss plaintiffs' Complaint, showing the Court the following:

**Introduction**

As provided in Defendants' principal brief, this lawsuit stems from an accidental shooting that occurred as law enforcement officers took Christopher Barnett into custody at 145 Burton Road, Lot 19, Douglas, Georgia. All of the Plaintiffs' were either present at the time or are bringing suit

on behalf of their children who were present at the residence when the search occurred. Subsequently, Defendants filed a Motion to Dismiss and a brief in support demonstrating the Plaintiffs' claims are all without merit due to a failure to serve the Defendants' within the time frame established by the Federal Rules of Civil Procedure and a myriad of state and federal immunities. In response, Plaintiffs have filed a brief that fails to provide any additional substantive support for the claims asserted and for the most part just cites to statutory and case law without providing any context or additional facts that supplement their initial Complaint.  Plaintiffs seemingly argue in response to Defendants' personal jurisdiction defense that they have subject matter jurisdiction. However, nothing in their response overcomes their failure to serve Defendants within 90 days of filing their complaint in compliance with Rule 4, as discussed in Defendants' principal brief. Plaintiffs also appear to argue Defendants' sovereign immunity is waived by the Georgia Tort Claims Act, O.C.G.A. § 50-21-23.  However, this assertion is clearly contrary to long established case law and dispelled by simply reading the text of the statute incorporated into Plaintiffs' brief.  Defendants have responded to these and other assertions by Plaintiffs.  As shown below, all claims are subject to dismissal.

## Argument and Citation of Authority

**A.    The language of the Georgia Tort Claims Act does not change the fact that Defendants were acting as an "arm of the state" at all times relevant to this suit.**

The Defendants' principal brief explained that the Eleventh Amendment generally bars any suit in federal court against a state absent the state's consent. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Though the State itself is not a party here, Eleventh Amendment immunity also protects any "arm of the State." See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274,

280 (1977). The Eleventh Circuit's decision in Pellitteri v. Prine, 776 F.3d 777 (11th Cir. 2015), compels the conclusion that the claims against Sheriff Doyle Wooten and Deputy Michael Vickers, in their official capacity are claims against an arm of the state.

Plaintiffs' Response quotes the language of O.C.G.A. § 50-21-23 for the proposition that sovereign immunity is waived. [Dkt. No. 8, ¶5]. While O.C.G.A. § 50-21-23(a) discusses the waiver of sovereign immunity for the torts of state officers and employees while "acting within the scope of their official duties or employment," O.C.G.A. 50-21-23(b), even assuming it is relevant to this action[1] provides that "sovereign immunity is only waived with respect to actions brought in the courts of the State of Georgia." This action was brought in the United States District Court Southern District of Georgia, Waycross Division. [Dkt. No. 1]. Thus, this is not an action brought in the courts of the State of Georgia and the Georgia Tort Claims Act itself expressly provides there is no waiver of Defendants' Eleventh Amendment Immunity.

**B.   Plaintiffs' federal claims are barred by qualified immunity.**

Plaintiffs' response cites to several cases for the proposition that Defendants can be held liable for violating a constitutional right that was clearly established at the time, however, plaintiffs provide nothing in the way of additional facts to support their argument that the conduct of Defendants violated a constitutional right that was clearly established at the time of this incident.[2]

---

[1]    In actuality, the GTCA does not appear to apply to a Georgia Sheriff.

[2]    Although not within the four corners of Plaintiffs' Complaint, and therefore, inappropriate for consideration on a Motion to Dismiss, the GBI file referenced by Plaintiffs throughout their Complaint also contains a copy of a valid search warrant permitting entry onto the premises in question for the purpose of locating and detaining Christopher Barnett, who was in fact located at the premises and taken into custody. It is well-settled that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" Muehler v. Mena, 544 U.S.

[Dkt. No. 8, ¶¶6-8].  "The defense of qualified immunity requires courts to enter judgment in favor of a government employee unless the employee's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Morse v. Frederick, 551 U.S. 393, 429 (2007).

In explaining when a right is "clearly established," the Supreme Court has held that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  A plaintiff cannot normally meet that burden unless he can point to previous case law holding that the specific conduct at issue is unlawful. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) (citations and some quotation marks omitted).  Thus, "to defeat summary judgment . . . a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." Id.

Plaintiffs' have provided no additional facts that indicate there was anything other than an accidental application of force with respect to SDC or anything more than a de minimis amount of

---

93, 98, (2005) (quoting Michigan v. Summers, 452 U.S. 692, 705 n.19 (1981)).  This includes the use of reasonable force to effectuate the detention. Id. at 98-99.  The imposition of correctly applied handcuffs to effectuate detention during a search is, in appropriate circumstances, a reasonable application of force. Id. at 99; see also Maryland v. Wilson, 519 U.S. 408, 414 (1997) (noting that the need to detain multiple persons made the use of handcuffs all the more reasonable); Summers, 452 U.S. at 702-03 (recognizing the execution of a warrant to search for drugs is an inherently dangerous situation which "may give rise to sudden violence or frantic efforts to conceal or destroy evidence" and that the risk of harm to officers and occupants "is minimized if the officers routinely exercise unquestioned command of the situation").  Further, "the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Summers, 452 U.S. at 703.

force used to detain the bystanders who were at the location where Christopher Barnett was apprehended.  As discussed at length in Defendants' brief, not only is there no Eleventh Circuit case law establishing that Vickers's conduct was clearly illegal; the right which SDC seeks to vindicate – the right to be free from the accidental application of force – is one that the Eleventh Circuit has explicitly held is *not* clearly established. <u>Speight v. Griggs</u>, 620 Fed. Appx. 806 (11th Cir. 2015). Further, Plaintiffs have not pointed to any case law that holds the detention of bystanders during the apprehension of a suspect at a residence is contrary to the laws of the Georgia or the United States.[3]

**C.      No viable federal or state Equal Protection claim has been pled.**

Plaintiffs' response provides "Plaintiffs' case is filed under 42 U.S.C. § 1983, which broadly subject local and state government actors, as well as local governmental entities, to liability for the violation of rights 'secured by the Constitution and laws' of the United States." [Dkt. No. 8, ¶8]. Further, Section IV of Plaintiffs' Complaint states the actions of Defendants resulted in "[t]he deprivation of Plaintiffs [sic] and their minor children's rights to equal protection of their person and property as secured by the Constitution of the United States via the 14th Amendment and by the Constitution of the State of Georgia Article I, Section I, Paragraph II: . .  ." [Dkt. No. 1, p.7]. However, this falls far short of pleading a violation of equal protection under either federal or state law.

Focusing on the alleged "deprivation" of equal protection, the Plaintiffs response still fails to allege or provide factual support, demonstrating any impermissible class based animus by defendants.  As discussed in Defendants' brief, "different treatment of dissimilarly situated persons

---

[3]      Also, defendants reiterate that the Complaint makes clear none of them had any involvement with a party other than SDC, so all other Plaintiffs' claims are barred for that reason.

does not violate civil rights laws." <u>Jackson v. Bell South Telecommunications</u>, 372 F. 3d 1250, 1273 (11th Cir. 2004).  <u>See</u> <u>also</u> <u>E & T Realty v. Strickland</u>, 830 F. 2d 1107, 1109 (11th Cir. 1987).  In a discrimination case, the plaintiff must allege that similarly situated individuals were treated more favorably and the individuals used for comparison "must be similarly situated in all relevant respects besides race." <u>Jackson v. Bell South Telecommunications</u>, supra at p. 1273.  <u>See</u> <u>also</u> <u>Knight v. Baptist Hospital of Miami, Inc.</u>, 330 F. 3d 1313, 1316 (11th Cir. 2003).

In the instant case, the plaintiffs do not allege any treatment they received was due to any impermissible class based animus (e.g., race, gender, age, disability, etc.).  As such, they do not state a federal Equal Protection claim.

Further, "Georgia has no equivalent to 42 USC § 1983, which gives a claim against a state officer individually for certain unconstitutional acts." <u>Davis v. Standifer</u>, 275 Ga. App. 769, 772 n.2, 621 S.E.2d 852, 855 (2005) (punctuation omitted).  Georgia law thus does not provide any cause of action for the violation of a right protected by the Georgia Constitution, and plaintiffs' claims "under the Constitution of the State of Georgia" fail. <u>Draper v. Reynolds</u>, 278 Ga. App. 401, 403 n.2, 629 S.E.2d 476, 478 (2006) ("To the extent that Draper is attempting to allege state constitutional claims, we note that Georgia does not have an equivalent to 42 USC § 1983.").

**D.    Plaintiffs' have not provided sufficient facts to allege supervisory liability in the 11th Circuit.**

Finally, in their response Plaintiffs' cite to three 1st Circuit cases purporting to provide a framework for supervisor liability.[4] [Dkt. No. 8, ¶9].  However, the 11th Circuit has held  that a supervisor may be held liable only where he personally participated in a constitutional violation or

---

[4]      To the extent Plaintiffs' continue to assert supervisor liability against Coffee County, Defendants' principal brief outlined Coffee County's lack of liability under both federal and state law.

where there is a "causal connection between [his] actions . . . and the alleged constitutional deprivation." Braddy v. Florida Dept. of Labor and Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998).  The causal connection may be established by showing that (1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) the facts support an "inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiffs' Complaint alleges that Sheriff Wooten "fail[ed] to provide adequate training and instruction as to the care and responsibility required for the safety of bystanders generally when effectuating the arrest of criminal suspects, nor did he provide adequate training and instruction on alternative means of handling animals if perceived as a threat." [Dkt. No. 1, ¶ 38].  These allegations are simply insufficient to establish supervisor liability.

Again, as discussed in Defendants' principal brief, there are no allegations Sheriff Wooten personally participated in the entry onto the property or was otherwise involved. [Generally, Dkt. No. 1].  Nor has plaintiff claimed that Sheriff Wooten was aware of a history of widespread abuse, implemented a policy that resulted in deliberate indifference, or directed the deputies to act unlawfully.  Rather, plaintiffs claim defendant Vickers had used force on previous occasions and "shot and killed a dog during the execution of a search warrant on or about a month prior to the instant case." [Dkt No. 1, ¶39].  However, these facts, to the extent they even allege a constitutional violation, do not allege that Sheriff Wooten was aware his deputies were going to engage in unlawful activity and did nothing to stop them. Keating v. City of Miami, 598 F.3d 753, 763-65 (11th Cir.

-7-

2010).  To show that a supervisor's deliberate indifference actually caused a constitutional violation, a plaintiff must show "a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures." Belcher v. City of Foley, 30 F.3d 1390, 1398 (11th Cir. 1994). The history of abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990). Mere complaints of past violations are insufficient; the plaintiff must prove that those complaints actually had merit. See Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that evidence of ten unsubstantiated excessive-force complaints did not prove city policy of condoning or tolerating excessive force).[5]  There is no "history of widespread abuse" of individuals like Plaintiffs, and liability cannot attach to Sheriff Wooten under a custom or practice theory.  Consequently, Sheriff Wooten cannot be held liable under §1983 for any alleged violation.

E. **Plaintiffs have now acknowledged that service of the Summons and Complaint upon defendants was untimely.**

In accordance with the Federal Rules of Civil Procedure, the plaintiffs "[are] **responsible** for having the summons and complaint served within the [90 day] time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." FRCP 4(c)(1).  The affidavit submitted by plaintiffs (Dkt. No. 8-1), confirms that service upon defendants was untimely and not in compliance with FRCP 4(m).  Apparently attempting to respond to defendants' personal jurisdiction defense in ¶¶ 2-4 of their response, Plaintiffs' cite to several federal code provisions, which they claim provides this court with jurisdiction.  While they may provide the court with

---

[5] Plaintiffs' vague reference to "ten separate occurrences" of excessive force is unavailing. [Dkt. No. 1, ¶ 38].  Only one allegedly involved a dog being "shot and killed" (which is false, but must be assumed true for instant purposes).  Plaintiff does not attempt to supply any details of the substantial similarity required to rely upon such alleged incidents.

-3-

subject matter jurisdiction, those provisions fail to provide any support remedying Plaintiffs' failure to gain personal jurisdiction.  Plaintiffs' affidavit attempts to characterize their failure to serve defendants in accordance with Rule 4(m) as being through no fault of their own and portray their efforts to serve defendants as proactive.  However, the fact is, Plaintiffs effectively waited two years to file their lawsuit and then were dilatory in their responsibility to serve the defendants.  Clearly, Plaintiffs have been aware of the facts giving rise to these claims since the incident occurred Further, they have been represented by counsel since that time, as Plaintiffs' counsel participated in the GBI interviews mentioned in the Complaint. [Dkt. No. 1, ¶37].  Additionally, Plaintiffs sent a demand letter in June of 2015 to the same addresses that Plaintiffs used to deliver the summons on October 4, 2016, outside of the 90 days provided. [Dkt. No. 1, ¶20, Plaintiffs' Exhibit "A"].  Although Plaintiffs were aware of who the defendants were and their location for over a year, Plaintiffs did not even seek a waiver under Rule 4(d), which would have negated their need to serve Defendants.

The affidavit of counsel for Plaintiffs filed with Plaintiffs' response points a finger at many individuals and their apparent lack of expeditiousness or their decisions not to serve defendants. Plaintiffs aver they attempted to contact the U.S. Marshals Service's office several times each day, however, Plaintiffs also indicate they never received a response.  Rather than take additional actions to ensure the Marshals Service was in the process of serving Defendants or immediately hiring a civil process server, according to their affidavit, Plaintiffs were content to continue to contact the Marshals Service several times a day for the following month, apparently without any success. Finally, on the date Plaintiffs were required under Rule 4(m) to effectuate service, Plaintiffs claim

they  hired a process server.  Not surprisingly, Defendants were not served on that date.  In fact, Defendants were not served until almost a week later.

Here, Plaintiffs were charged with the responsibility of serving defendants and by their own admission they waited until the last day under the time frame established by Rule 4(m) to proactively attempt to serve defendants.  The affidavit Plaintiffs provided attempts to paint a picture that they were ardent in their attempts, however, a close review of the affidavit and the dates makes clear Plaintiffs did not assume responsibility for ensuring defendants were served in time.

At this point, defendants, so as not to be repetitive, refer the Court to the legal authorities set forth in their Motion to Dismiss, particularly pages 16-17 of Dkt. No. 4-1.  As noted, the Eleventh Circuit decision in Melton v. Wiley, 262 F.Appx 921 (11th Cir. 2008), *rehearing en banc denied*, 285 F. Appx. 741 (11th Cir. 2008), addresses the very situation presented by plaintiff in the instant case. Plaintiffs did not seek an extension and waited until the last day permitted to hire a process server to attempt to serve defendants.  By doing so, Plaintiffs proceeded at their own peril because "[p]roper service on a defendant within the time allowed under Rule 4(m) is a plaintiff's responsibility." Melton at 922.  *See also* Lapone - Dempsey v. Carroll County Commissioners, 476 F.3d 1277, 1280-81 (11th Cir. 2007).

Simply, Melton, and the numerous district court opinions cited on pages 16-17 of Dkt. No. 4-1 make clear that defendants are entitled to dismissal because plaintiffs' Complaint was not timely served.  As a result, it is also barred by the statute of limitations.  In Melton, the district court dismissed plaintiff's case without prejudice for failure to perfect a timely service of process, but "because the statute of limitations would bar a refiled action, the dismissal was tantamount to a dismissal with prejudice." Melton at 922.  Again, in the instant case, by virtue of the affidavit in the

record, it is established both that timely service of process has not been made, and that the statute of limitations bars the claim.

Plaintiffs' Complaint was filed on July 1, 2016, and the 90-day service period provided by Rule 4(m) expired on September 29, 2016. All of the events at issue occurred on July 10, 2014, and Plaintiffs were aware of the facts that inform their Complaint on that date. [Dkt. No. 1 at ¶23]. Because all of Plaintiffs' claims are based on 42 U.S.C. §1983, the statute of limitation on those claims ran on July 10, 2016. But service of Plaintiffs' Complaint was not made until October 4, 2016 – after the running of the statute of limitations, and after the expiration of the 90-day 4(m) period for service. Plaintiffs failed to effect timely service of their Complaint, and in light of the fact that the statute of limitations has run and the claims cannot be re-filed, dismissal with prejudice is warranted.[6]

## **CONCLUSION**

Plaintiffs' Complaint fails to state a claim and is subject to dismissal.

---

[6]     Defendants acknowledge that the claims by the minor plaintiffs are tolled, and note that those claims should be dismissed without prejudice.

This 14th day of December, 2016.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia State Bar Number: 687830
/s/ Sean K. Scally
Sean K. Scally
Georgia State Bar Number: 824495
**ATTORNEYS FOR DEFENDANTS**
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| AMY CORBITT, Individually and as Parent and Natural Guardian of SDC, a Minor; JERRY RICH, Individually; ELIZABETH BOWER, as Parent and Natural Guardian of AMB, a Minor; and TONYA JOHNSON, as Parent and Natural Guardian of ERA, a Minor; DAMION STEWART, Individually and as Parent and Natural Guardian of JDS, a Minor; and as Parent and Natural Guardian of MS, a Minor, | * * * * * * * * * * |
| Plaintiffs | * * |
| v. | * Case Number: 5:16-cv-51 * |
| COFFEE COUNTY, GEORGIA; DOYLE WOOTEN, Individually and in his Official Capacity as Sheriff of Coffee County; and MICHAEL VICKERS, Individually and in his Official Capacity as Deputy Sheriff of Coffee County, Georgia, | * * * * * * * |
| Defendants | * |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 14th day of December, 2016.

/s/ Sean K. Scally
Sean K. Scally
Georgia Bar Number: 824495
**Attorney for Defendants**