# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

AMY CORBITT, individually
and as parent and natural
guardian of SDC; JERRY
RICH, individually;
ELIZABETH BOWEN, as parent
and natural guardian of
AMB; TONYA JOHNSON, as
parent and natural
guardian of ERA; DAMION
STEWART, individually and
as parent and natural
guardian of JDS and as
parent and natural
guardian of MS,

    Plaintiffs,

    v.

DOYLE WOOTEN,
individually; and MICHAEL
VICKERS, individually,

    Defendants.

NO. 5:16-CV-51

## ORDER

Before the Court is Defendants' Motion to Dismiss (Dkt. No. 4) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This Motion has been fully briefed and orally argued, and is now ripe for review. For the following reasons, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## **BACKGROUND**

At this stage of the case, the facts are taken from the Complaint and assumed to be true pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 10, 2014, Defendant Michael Vickers ("Vickers") and other officers of the Coffee County Sheriff's Department and the Georgia Bureau of Investigation participated in an operation to apprehend criminal suspect Christopher Barnett. Dkt. No. 1 ¶ 23. They entered Plaintiff Amy Corbitt's ("Corbitt") property at 145 Burton Road, Lot 19 and ordered all persons to get down on the ground. Id. ¶ 24. Inside the property were Plaintiff Corbitt and non-party minors JVR and ST. Id. Outside the property were Plaintiff Stewart and minor Plaintiffs Rich, JDS, MS, SDC, AMB, and ERA. Id. Officers handcuffed Plaintiff Stewart and placed the barrel of a gun in his back in the presence of his two children under the age of three. Id. Those children roamed the adjacent street, screaming and crying. Id. at ¶ 25. The remaining minors were each held at gunpoint, lying on the ground, when Defendant Vickers intentionally fired two shots at the family pet named "Bruce." Id. at ¶ 27, 28. The first shot missed. Id. at ¶ 28. The second shot missed the pet and hit ten-year-old SDC in the back of his right knee. Id. at ¶¶ 28, 32.

None of the Plaintiffs had ever met the criminal suspect Christopher Barnett. Id. ¶ 23. All of the plaintiffs followed

Defendant Vickers's orders.  Id. ¶ 32.  The complaint alleges that no officer at the scene was required to discharge a firearm.  Id. ¶ 29.  At the time he fired two bullets at the pet, Vickers was armed with a gun, a Taser, and pepper spray. Id. ¶ 41.  Before Vickers shot at Bruce, neither he nor any other agent attempted to restrain the animal, whether directly or otherwise.  Id. ¶ 28.  Vickers was only eighteen inches from SDC when he shot the child.  Id. ¶ 29.

Tests run at Coffee Regional Medical Center and the University Medical Center in Savannah, GA confirmed multiple bullet fragments throughout the area of SDC's wound, and, at the time the Complaint was filed, SDC was under evaluation by an orthopedic surgeon for the removal of the bullet fragments.  Id. ¶ 33-34.

Eight Plaintiffs filed suit, asserting various state and federal claims against the County, the sheriff, and Vickers. The only remaining claims are by all Plaintiffs against Vickers in his individual capacity and by Plaintiffs ERA, Stewart, JDS, and MS against Wooten in his individual capacity.[1]

---

[1] At an oral hearing on this Motion on August 31, 2017, Plaintiff voluntarily dismissed claims against Coffee County and Vickers and Wooten in their official capacities, as well as the Equal Protection claim and all state law claims.  The most recent filing of Plaintiffs Corbitt, SDC, Rich, and AMB also makes clear that those Plaintiffs have dismissed their claims against Wooten in his individual capacity.  The claims against Wooten in his individual capacity brought by ERA, Stewart, JDS, and MS remain.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In order to state a claim for relief, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). However, the Court does not accept as true threadbare recitations of the elements of the claim and disregards legal conclusions unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

Plaintiffs have brought 42 U.S.C. § 1983 claims asserting that Vickers and Wooten[2] deprived them of their constitutional rights to be free from excessive force. In response, Vickers and Wooten have raised the defense of qualified immunity and argued that Plaintiffs have failed to state claims upon which relief may be granted.

The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of [a] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 394 (1989). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "To assert a Fourth Amendment claim based on the use of excessive force, the plaintiffs must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1166 (11th Cir. 2005).

Vickers has raised the defense of qualified immunity. "The defense of qualified immunity requires courts to enter judgment in favor of a government employee unless the employee's

---

[2] Only Plaintiffs ERA, Stewart, JDS, and MS have remaining claims against Wooten.

conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Morse v. Frederick</u>, 551 U.S. 393, 429 (2007). "[T]he burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993).

"'Once the affirmative defense of qualified immunity is advanced . . ., [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003) (quoting <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc)). "Absent such allegations, '[i]t is . . . appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage.'" <u>Id.</u> (quoting <u>Gonzalez v. Reno</u>, 325 F.3d 1228, at *3 (11th Cir. 2003)).

The defense of qualified immunity presents a two-step inquiry. First, the government official must prove that he was acting within his discretionary authority. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). Then, the burden shifts to the plaintiff to show that the defendant's actions violated a constitutional right, and that such right was clearly

established.  Id.  Vickers argues throughout his brief that no Fourth Amendment violation occurred because he did not intend to shoot SDC.  He does not articulate whether he means that no seizure occurred or that the force was not excessive, so the Court will address the argument under both prongs.

**A. Seizure**

A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through <u>means intentionally applied</u>."  Id. (quoting <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 597 (1989) (emphasis in original)).  A seizure is an "intentional acquisition of physical control" by a government actor.  <u>Brower</u>, 489 U.S. at 596.

A person is "'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980).  "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers [and] the display of weapons by an officer . . . ."  Id.  "A seizure occurs even when an unintended person or thing is the object of the detention or taking . . . but the detention or taking itself must be willful."  <u>Brower</u>, 189 U.S. at 596.

7

The Supreme Court applied these rules in _Brower_. There, the plaintiff was killed when the stolen car he had been driving at high speeds to elude police crashed into a police roadblock. _Id._ at 594. The Court of Appeals had held that no seizure occurred because his freedom of movement was never restrained prior to his decision not to stop at the roadblock. _Id._ at 595. That would stretch the definition of seizure too thin, the Supreme Court reasoned. _Id._ at 598-99. The police set up a roadblock to stop the plaintiff. _Id._ at 599. The roadblock stopped the plaintiff. _Id._ It did not matter that they intended the roadblock to stop him by preventing him from driving down a particular road and it in fact stopped him by killing him when he crashed into it. _Id._

The Eleventh Circuit has also applied these rules in defining a seizure in the context of an excessive force claim. In _Vaughan v. Cox_, the plaintiff asserting a Fourth Amendment excessive force claim against the officer who shot him was a passenger in a truck. 343 F.3d 1323, 1328 (11th Cir. 2003). The officer intended to shoot the truck, thereby disabling it and ramming it off the road, but he ultimately hit the plaintiff. _Id._ at 1327. Because the officer had not intended to shoot the plaintiff, the district court held that the plaintiff had not suffered a Fourth Amendment seizure. _Id._ at 1328. The Eleventh Circuit reversed, explaining that because

the plaintiff was hit by a bullet that was meant to and did stop him, he was subjected to a Fourth Amendment seizure. Id. at 1328-29. In other words, a seizure occurs when an officer intentionally sets into motion an instrumentality that has the effect of restricting the plaintiff's movement. When an officer intends to stop or seize a person, and does so, it does not matter that he does so in a way other than the way in which he intended.

### 1. Corbitt[3], SDC, AMB, ERA, and Rich v. Vickers

Here, Plaintiffs have alleged that Vickers seized SDC, AMB, ERA, and Rich—the minor Plaintiffs held at gunpoint outside the property. Plaintiffs SDC, Rich, AMB, and ERA claim that their Fourth Amendment seizures were effected by the placement of gun barrels in their backs.

The Complaint alleges that Vickers (and fellow officers) demanded the children get down on the ground with the barrel of loaded guns shoved into their backs. Dkt. No. 1 ¶¶ 24, 27. It further alleges that while they were lying on the ground obeying Vickers, Vickers discharged his firearm twice. Id. ¶ 28. This would cause reasonable people to believe they were "not free to leave." Mendenhall, 446 U.S. at 554. It is exactly the type of situation that Mendenhall prescribes as constituting a seizure:

---

[3] Corbitt's claim is derivative of her minor child (SDC)'s claim, and they progress or fall together.

9

"the threatening presence of several officers [and] the display of weapons by an officer." Id. These allegations show that Vickers effectuated a seizure even before firing his weapon. But he did fire his weapon. And even though that satisfies the first element of a Fourth Amendment violation, the Court will now address Vickers's argument that unintentionally shooting SDC means no seizure occurred.

No Eleventh Circuit case directly addresses how to handle the case where an officer shoots someone he was not aiming to hit. Regarding the application of the Fourth Amendment to an accidental discharge of a weapon, the circuits are split, and the Eleventh Circuit has not been faced with the question. [4]

The Second Circuit declared that the Fourth Amendment only applies to shootings designed for "the purpose of seizing" the suspect. Dodd v. City of Norwich, 827 F.2d 1, 7 (2d Cir. 1987), cert. denied, 484 U.S. 1007 (1988). It explained that "[i]t makes little sense to apply a standard of reasonableness to an accident" because that would extend liability to negligence claims. Id. at 7-8. That case dealt with the inadvertent shooting of an already apprehended burglar. Id. On the other hand, the Sixth Circuit in Pleasant v. Zamieski held that the

---

[4] This is not an accidental firing case because the weapon was intentionally fired. Instead, this is an accidental shooting case. That is, the weapon was fired in order to shoot the pet. The shot hit the child accidentally. Vickers inaccurately defines the constitutional right at issue as the right to be free from the accidental application of force. Still, it is worth examining the circuit split on that analogous issue.

use of force should be examined under the reasonableness standard even if the seizure was negligent rather than intentional—that is, where the shooting was undisputably accidental and not the result of the deliberate use of force. 895 F.2d 272, 276-77 (6th Cir. 1990).

At least one district court in the Eleventh Circuit has chosen to follow the second line of reasoning.[5] The Northern District of Georgia held in Speight v. Griggs that the accidental discharge of a firearm resulting in an unintentional shooting during the course of an arrest may constitute excessive force under the Fourth Amendment if the officer's course of conduct preceding the shooting is unreasonable under the circumstances. 13 F. Supp. 3d 1298, 1319 (N.D. Ga. 2013), vacated on other grounds, 579 Fed. Appx. 757 (11th Cir. 2014). In reaching its decision, the Speight court noted the Supreme Court's reasoning in Brower that the line defining a seizure cannot be drawn too fine lest one be determined not seized "'who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned.'" Id. at 1320 (quoting Brower, 489 U.S. at 598).

In the present case, Vickers had ordered Plaintiffs to the ground at gunpoint before any "accident" occurred. A reasonable

---

[5] The Court finds no courts in this Circuit that have chosen to follow the first line of reasoning.

inference from the allegations in the Complaint, drawn in Plaintiffs' favor for the purpose of this Motion, is that Vickers fired his weapon at the animal in order to keep control of SDC, AMB, ERA, and Rich—that is, in order to continue their seizure. In other words, a jury could find that Vickers intended to shoot the animal in order to maintain his control of the situation and keep Plaintiffs from escaping while the animal distracted Plaintiffs. And his action had the _effect_ of continuing to seize the Plaintiffs—they did not budge when he fired his gun. Because Vickers shot his gun for the purpose of carrying out the seizure, and a seizure occurred, Vickers's not intending to shoot SDC does not negate that seizure. Just as in Vaughan, while the _result_ of discharging the weapon may be an accident, the _actual discharge_ was intentional. And the force he exerted intentionally is certainly capable of excess.

Vickers asks the Court to follow the decision in Dahm v. City of Miamisburg, 1997 WL 1764770 (S.D. Ohio 1997). At first blush, the facts of that case are directly analogous to the facts in this case—while attempting to arrest the plaintiff, an officer fired toward the plaintiff's dog but actually hit the plaintiff himself. Id. at *8. The court looked closely at the Supreme Court's direction in Brower and noted that a jury could find that the officer shot the advancing dog in order to seize the plaintiff. Id. A closer look at the facts: the officer

arrived at the plaintiff's home to execute a search warrant. Id. at *4. As he entered the front door, the first thing he saw was the plaintiff's dog charging at him. Id. at *5. He shot at the dog but missed and hit the plaintiff. Id. The Court concluded that the situation was too attenuated to constitute a Fourth Amendment violation, that the plaintiff was not "stopped by the very instrumentality set in motion or put in place in order to achieve that result." Id. at *9. It reasoned that even if the officer had successfully shot the dog as he intended, that action would not have seized the plaintiff because it would merely have allowed the officers to safely enter the residence. Id.

Those facts are distinguishable from the ones here. While the officer in Dahm had not come into contact with the plaintiff before shooting the dog, Vickers had already ordered SDC to the ground at gunpoint. While shooting the dog in Dahm would only have eliminated one barrier in locating and seizing the plaintiff, shooting the pet here, according to the allegations in the Complaint, would have eliminated the only potential barrier to Vickers' complete control of the Plaintiffs. In other words, the officer in Dahm did not shoot his weapon at the dog in order to restrict the plaintiff's movement. Shooting the dog would have simply allowed him to later take steps to seize the plaintiff, albeit only moments later. Here, in contrast, a

13

reasonable jury could conclude that Vickers shot at Bruce in order to prevent any of the Plaintiffs from escaping from his control. Shooting Bruce would have ensured that. Therefore, the decision in _Dahm_ does not change the conclusion that a jury could find that Vickers shot toward Bruce in furtherance of the seizure of the Plaintiffs.

### 2. Plaintiffs Stewart, JDS, MS

Plaintiff Stewart claims that his Fourth Amendment seizure was effected by the application of handcuffs. The problem with this claim is that the Complaint does not allege that Vickers himself handcuffed Stewart, whether directly or by ordering another to do so. It merely states that "Plaintiff Stewart was brutally handcuffed." _Id._ ¶ 24. Without linking this action to Vickers, no claim can be stated against him. Thus, the Court need not analyze whether the use of handcuffs constitutes a seizure and whether that alleged seizure was reasonable. Stewart's claim against Vickers must be dismissed.

The claims against Vickers brought by Stewart's minor children, JDS and MS, fail for the same reason. The Complaint makes no allegations that Vickers himself caused any type of injury to JDS and MS. The only injury occurred as a result of their father's handcuffing (_Id._ ¶ 25) in which Vickers played no part. These claims are also dismissed.

## B. Qualified Immunity

Here, it is clear that Vickers was acting under his discretionary authority. Actions fall under a government official's discretionary function when they "'are of a type that f[a]ll within the employee's job responsibilities.'" Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004)). And, "making an arrest is within the official responsibilities of a sheriff's deputy." Vickers was a sheriff's deputy performing an arrest. Dkt. No. 1 ¶¶ 14, 23.

Second, the Court must decide whether Vickers violated a clearly established constitutional right. "It is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998). Thus, Vickers is not entitled to qualified immunity if he used excessive force in firing his weapon.

No constitutional violation can be shown where an official's actions are "'objectively reasonable'—that is, if a reasonable officer in the same situation would have believed that the force used was not excessive." Id. at 1400 (citing Anderson v. Creighton, 483 U.S. 635 (1987)). Sometimes, "no factually particularized, preexisting case law [is] necessary for it to be very obvious to every objectively reasonable

officer    facing    [the    defendant's]    situation    that    [his]
conduct . . . violated [the plaintiff's] right to be free of the
excessive use of force."  Vinyard v. Wilson, 311 F.3d 1340, 1355
(11th Cir. 2002).

In Thornton, the Eleventh Circuit concluded that the use of
any force was excessive where the plaintiffs were not suspected
of having committed a serious crime, posed no threat to anyone,
and did not actively resist the officers.  132 F.3d 1998.

### 1. SDC v. Vickers

The Court turns again to Vaughan v. Cox.  While it is not
analogous in all aspects, it is a case where the officer shot an
individual   he   was   not   aiming   to   hit,   and   the   officer   had
intentionally seized the plaintiff and intentionally fired his
weapon.  There, the officer aimed to hit either the driver of a
truck or the truck itself.  343 F.3d at 1327.  He hit the
passenger instead.  Id.  That the officer shot a person he was
not aiming to hit did not stop the Eleventh Circuit from
conducting   an   excessive   force   analysis.    In   so   doing,   the
Eleventh Circuit was examining the excessiveness of the force
that the officer had intentionally applied.  It did not ask
whether shooting the passenger was excessive on its own but
whether it was excessive even for the officer to shoot according
to his plan.  The Eleventh Circuit examined the excessiveness of
the force exerted in Cooper v. Rutherford in a similar way.  503

Fed. App'x 672 (11th Cir. 2012). There, the plaintiffs were seriously injured when an armed bank robber attempted to elude the police by attempting to steal the car in which they were riding. Id. at 673. The officers fired their guns at the suspect to prevent him from escaping with the hostages, but he hit the plaintiffs instead. Id. The court examined the excessiveness of the force as though it was exerted against the suspect the officer aimed to hit and held that it was not clearly established that the officer's actions in firing 24 shots were unreasonable. Id. at 676.

Here, though Vickers did not intend to exert any force against SDC, he did intend to exert force against the animal. This Court must therefore analyze whether or not that exertion of force was excessive or objectively reasonable.

"The touchstone for reasonableness in [animal] shooting cases is typically officer safety."[6] Schutt v. Lewis, 2014 WL 3908187, *3(M.D. Fla. 2014). In Schutt, the officer reasonably shot a dog that was rapidly approaching him and disobeying its owner's order. Id. Here, in contrast, the Complaint alleges that Vickers discharged his firearm "without necessity or any immediate threat or cause." Dkt. No. 1 ¶ 28. It alleges further that Vickers never attempted to restrain the animal or ask anyone else to do so. Id. The first shot occurred "[w]hile

---

[6] At this point, the record does not indicate what kind of animal the pet was.

the children were lying on the ground obeying the orders of Defendant Vickers," and the second shot occurred as the animal "was approaching his owners." Id. No one besides the officers possessed firearms, "nor did anyone appear to be threatened by [Bruce's] presence." Id. ¶ 29. SDC "offered no hindrance or obstruction to the efforts of Defendant Vickers and others during the apprehension of Cristopher [sic] Barnett." Id. ¶ 32. Specifically, no allegations suggest that Vickers was unsafe in any way or that Bruce exhibited any signs of aggression.

It may well be that the record will develop in a much different fashion. Facts remain to be developed including details about the pet, its history, appearance, behavior, relationship to Plaintiffs, etc. At this stage, the complaint makes sufficient allegations to proceed. Therefore, Vickers's Motion to Dismiss SDC's claim is denied at this time. This does not preclude Vickers from raising the defense of qualified immunity at a later stage of the case.

### 2. Other Plaintiffs v. Vickers

Even assuming the truth of the Complaint, the force that Vickers exerted against Plaintiffs Rich, AMB, and ERA was reasonable. The only force that he exerted toward them was the discharge of a weapon aimed at Bruce that hit SDC. The Complaint does not allege that Vickers even pointed a gun at any

of these Plaintiffs.[7] Thus, the Complaint provides an even weaker case of excessive force than the one deemed reasonable in Croom v. Balkwill. 645 F.3d 1240 (11th Cir. 2011).

There, the deputy pushed the elderly plaintiff, also a witness to an arrest, to the ground from her squatting position and held her there with his leg for ten minutes. Id. at 1252-53. The Eleventh Circuit affirmed summary judgment for the officer because no constitutional violation had been shown where the plaintiff was in the front yard of a house known by law enforcement to be involved in the distribution of controlled substances. Id. The Court held that the officers were authorized to exercise authority "by placing all the occupants of the [p]remises on the ground for several minutes while securing the home and ensuring there was no danger to the officers or the public." Here, the Complaint itself alleges that Vickers knew the suspect was on the premises. Dkt. No. 1 ¶ 35-36. Hence, he and the other officers were authorized to place the bystanders on the ground for the duration of the arrest.

### 3. ERA, Stewart, JDS, and MS v. Wooten

The claims of ERA, Stewart, JDS, and MS against Wooten in his individual capacity are still asserted in the case.

---

[7] The Complaint makes other allegations that Plaintiffs "were held at gun point" with an "officer forcefully shov[ing] the barrel of a loaded gun into their backs," but the Complaint does not allege that Vickers was the subject of these actions. Dkt. No. 1 ¶ 27.

However, they are due to be dismissed. Just like Vickers, Wooten is entitled to qualified immunity for claims against him in his individual capacity unless Plaintiffs can show that he violated a constitutional right, and that that right was clearly established. Lee v. Ferraro, 284 F.3d at 1158.

According to the allegations in the complaint, Wooten's involvement with the incident giving rise to this litigation is limited to his supervisory role as Sheriff of Coffee County. Dkt. No. 1 ¶ 13. As Sheriff, the complaint alleges, he was responsible for establishing customs, policies, and procedures to regulate the conduct of agents and employees of the Coffee County Sheriff Department and for ensuring that employees complied with the law. Id.

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous. Cottone, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzales v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone, 326 F.3d at 1360. "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of

the need to correct the alleged deprivation, and he fails to do so.'" Id. (quoting Gonzalez, 325 F.3d at 1234).

Here, this Court has already found that the constitutional rights of ERA, Stewart, JDS, and MS were not violated. Wooten cannot be liable under § 1983 for actions he supervised that do not constitute a constitutional violation. This Court need not consider whether Plaintiffs sufficiently alleged a history of widespread abuse that put a responsible supervisor on notice of the need to correct a deprivation. Wooten cannot be liable as a supervisor, and all remaining claims against him are dismissed.

## CONCLUSION

Vickers's Motion to Dismiss SDC's § 1983 claim is hereby **DENIED.** Vickers's Motion to Dismiss all other claims of the remaining Plaintiffs—Stewart, Corbitt, Rich, AMB, ERA, JDS, and MS—is **GRANTED.** Wooten's Motion to Dismiss all remaining claims against him is hereby **GRANTED.**


**SO ORDERED,** this 5th day of December, 2017.


_____
HON. LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA